IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FABIAN WILLIAMS a.k.a.<br>"OCCASIONAL SUPERSTAR" et al.,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY OF ATLANTA, GEORGIA,<br><br>　　　　Defendant. | CIVIL ACTION<br>FILE NO. 1:17-CV-1943-AT |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
FOR PREVAILING PARTY FEES AND COSTS**

Plaintiffs brought suit seeking an injunction barring the enforcement of Atlanta Ordinance § 16-28.025 (the "Public Art Ordinance" or the "Ordinance") and money damages for the chilling of their constitutionally protected speech. After entering into a Consent Order, *see* Doc. 18, and agreeing to pay Plaintiffs $500.00 each—giving Plaintiffs each and every measure of relief sought in filing this action—Defendant City of Atlanta has set forth a smattering of reasons that Plaintiffs' are not a prevailing party and are not entitled to the attorneys' fees Congress provided for in 42 U.S.C. § 1988. None of Defendant's reasons provides a valid rationale upon which to deny or reduce the fees claimed by Plaintiffs. Thus, Plaintiffs' motion should be granted.

In their opposition to Plaintiffs' requested fees, Defendant has not identified any specific time expenditures that it claims were not necessary for the litigation of this matter. Neither has Defendant contested the propriety of Plaintiffs' counsels' claimed hourly rates. *See* Doc. 23, at 14. The lack of such specific objections is significant.[1] Rather, Defendant has taken the position that *all* of the time Plaintiffs' counsel expended is not compensable because the litigation itself was unnecessary.

In support of this claim, Defendant first argues that the threatened enforcement of the facially unconstitutional Public Art Ordinance (including criminal prosecutions and whitewashing of all non-compliant murals in the City by a date certain) was by a "low-level" employee acting "*ultra vires*" and cannot be imputed to the City. Doc. 23, at 1–2. Notwithstanding the fact that multiple departments of the City of Atlanta enforced the duly enacted Ordinance extensively, in any event, Defendant is wrong on the law – an employee acting

---

[1] "The opposing party who seriously seeks to contest the reasonableness of claimed hours should not limit its objection to a general, non-specific challenge to the excessiveness or duplication of work performed by counsel for the prevailing party, nor should it confine opposition to the presentation of a brief." Schwartz, Section 1983 Litigation, § 20.17. *See also Sheets v. Salt Lake County*, 45 F.3d 1383, 1391 (10th Cir. 1995) (waiver of right to contest fees where inadequate factual support in materials opposing fee application).

pursuant to an existing ordinance is acting pursuant to the authority of the City itself.

The City of Atlanta argues, second, that Plaintiffs are not prevailing parties because "the litigation had no impact on their legal relationship with the City." Doc. 23, at 10. To reach the conclusion Defendant urges, the Court would need to ignore its own Consent Order which effected a permanent injunction, Doc. 18, the settlement agreement between the parties reflected in the Consent Order, the actual damages awarded, and clear law explicating "prevailing party" status under § 1988. This argument can also be dispensed with readily.

Third, Defendant argues that even if Plaintiffs are prevailing parties, they should nevertheless be denied fees under § 1988 because they only received "marginal results" as the product of the "unnecessary work" of this litigation. Doc. 23, at 13. Defendant's attempt to label Plaintiffs' total and complete success as "marginal" is misplaced. Similarly, the notion that this litigation would have been obviated with an email or phone call is a counterfactual theory which is belied by years of Defendant ignoring complaints from all corners about the unconstitutionality of the Public Art Ordinance. Moreover, such a contention would impose an improper *ante litem* requirement on civil rights litigants that this Circuit has explained simply does not exist.

Accordingly, and as set forth in greater detail below, none of Defendant's rationales for denying Plaintiffs' motion for prevailing party fees have merit. Separately, Defendant has not put forward any objections to specific time entries other than to state, incorrectly, that the whole of the litigation was unreasonable. Similarly, Defendant does not contest Plaintiffs' counsels' hourly rates. Thus, this Court is without a cogent rationale upon which to reduce the fees and expenses claimed in Plaintiffs' motion pursuant to the lodestar framework. Consequently, Plaintiffs' motion for prevailing party fees and expenses should be granted in its entirety, as amended to account for the time required to respond to Defendant's brief in opposition.

### I. The duly enacted Public Arts Ordinance is official City policy and has been enforced for years.

Defendant City of Atlanta seeks to avoid its obligation to pay prevailing party fees pursuant to 42 U.S.C. § 1983 by contending that the only enforcement of the Public Art Ordinance was by a low-level employee acting outside the scope of her duties who had no authority to enforce the Public Art Ordinance. This contention would have the Court ignore several critical facts.

- First, the requirement that people wishing to engage in artistic expression first obtain pre-approval from a wide range of governmental departments of the City of Atlanta was not a lark that suddenly popped into an

employee's mind one day in early 2017; rather, the Public Art Ordinance itself is a duly enacted policy and law of the City of Atlanta.

- Second, the City's briefing ignores the fact that the Office of Cultural Affairs (the "OCA")—the department the City contends was without authority to enforce the ordinance, Doc. 23, at 8—has been engaged in the enforcement of the Public Art Ordinance since at least 2012. *See* Second Declaration of Gerald Weber, ¶ 7 and exhibits cited therein (describing extensive enforcement of the Public Art Ordinance for a period of years via an application process for prospective murals).

- Third, the City's briefing ignores extensive evidence that the enforcement of the ordinance was not undertaken by OCA employee Haley Carlson on her own initiative, but was instead part of a larger enforcement operation. *See* Second Weber Decl. ¶ 24 and exhibit and website cited therein (showing that the senior officials within the Office Cultural Affairs, Dorian McDuffie and Eddie Granderson, were involved in certifying artwork pursuant to a "Mural Amnesty Application" and "Certification for the Installation of Public Art"). **Notably, the Mural Amnesty Application, specifying the June 9, 2017 deadline, remains on a City of Atlanta website as of this filing.** *See id.* In other words, enforcement of the Ordinance was not limited to a stray Facebook message from an employee's personal account.

- Fourth, the City improperly contends that because each of "three City offices or commissions is required to review and approve" proposed artwork, "OCA does not have the authority to make unilateral decisions regarding enforcement." Doc. 23, at 8. That contention ignores the text of the Public Art Ordinance, which provides that a failure to clear one hurdle

of City government is independently sufficient to doom the approval of artwork.

These facts demonstrate that, contrary to the City's contentions, the enforcement of the Public Art Ordinance was neither isolated nor *ultra vires*.[2]

Notwithstanding the factual discrepancies between the parties' respective positions, in any event, whether or not the enforcement of the Public Art Ordinance was with or without official authority from the City is simply not relevant to the question of the City's liability for prevailing party fees under § 1988. Defendant's liability for attorneys' fees turns on the merits of the litigation, whether Plaintiffs are prevailing parties, and whether the fees claimed are reasonable.[3] The novel contention urged by the City that responsibility for attorneys' fees under § 1988 can be divorced from the responsibility of a municipality under § 1983 for an explicit policy enabling unconstitutional

---

[2] Defendant also appears to misapprehend the law surrounding circumstances that might render a government action void on grounds that it was undertaken without authority. "[T]here is a 'broad distinction between an irregular exercise of a granted power, and the total absence or want of power.' [*City of Holly Springs v. Cherokee Cty.*, 299 Ga. App. 451, 457, 682 S.E.2d 644 (2009)] Only in the latter circumstance does an action qualify as *ultra vires* under Georgia law." *S & M Brands, Inc. v. Georgia ex rel. Carr*, 230 F. Supp. 3d 1338, 1357 (N.D. Ga. 2017). Here, as shown above and by the text of the Public Art Ordinance, the OCA was plainly granted the authority to enforce the ordinance.

[3] *See generally Ela v. Destefano*, --- F.3d ---, 2017 WL 3725593 (11th Cir. Aug. 30, 2017) (after determining the merits were resolved in favor of plaintiff and that plaintiff was a prevailing party, examining the lodestar framework).

conduct is without the support of any precedent cited by Defendant or found in research by Plaintiffs' counsel. It is important to note that a municipality, such as Defendant, is only liable under § 1983 for its own misconduct (here an unconstitutional ordinance), meaning that the unconstitutional conduct of its employees—whether *ultra vires* or otherwise—does not subject it to liability under *respondeat superior* principles. *See, e.g.*, *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). The cases cited by Defendant in their brief on this point are not cases brought under § 1983 or § 1988, but rather are contract cases where a businesses should verify that city officials are acting with actual authority to bind their employer pursuant to the contract.[4] Thus, setting aside the factual problems with the City's argument laid out above, this Court is nevertheless without any source of authority upon which to sanction the City's suggestion that it can escape liability for fees when its employees acted pursuant to an ordinance that caused constitutional violations, and a lawsuit enjoined that very ordinance.

---

[4] *See City of Atlanta v. Black*, 265 Ga. 425, 426, 457 S.E.2d 551 (1995) ("It is the duty of any person dealing with a municipality in a <u>contractual relation</u> to see that there has been a compliance with the mandatory provisions of the law limiting and prescribing its powers, a duty which includes determining that the public officer *who executed a contract* has the requisite authority." (internal quotations, alterations, and citations omitted) (emphasis added); *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 27, 743 S.E.2d 381 (2013) ("[A] purported municipal contract may also be void and absolutely ineffective where *the city took no action at all* and the ultra vires act was that of one or more *city officials* who acted completely beyond their power to bind the city.").

> **II.    The Consent Order and the Settlement Agreement awarding damages are the strongest possible evidence that Plaintiffs are "prevailing parties" under 42 U.S.C. § 1988.**

Defendant maintains that Plaintiffs are not prevailing parties because Plaintiffs obtained what the City frames as "nominal damages" of $500.00 each. There are at least two independently sufficient reasons why Defendant's argument in this regard must be rejected. First, in advancing this argument, Defendant ignores entirely the fact that the City entered into a Consent Order agreeing to never again enforce the Public Art Ordinance. Second, to the extent an award of $500.00 to each of the four Plaintiffs can ever be characterized as "nominal damages," Plaintiffs are nonetheless prevailing parties; and because Plaintiffs vindicated important constitutional rights and secured a valuable public benefit as a result of the litigation, Plaintiffs are entitled to an award of attorneys' fees under § 1988.

First, and most clearly, the law is clear that the entry of consent order permanently enjoining an ordinance is sufficient to confer prevailing party status. *See Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003). In *Smalbein*, the Eleventh Circuit held that "one can be a prevailing party, for example, under an enforceable judgment on the merits or under a court-ordered consent decree. Either option constitutes a material alteration in the legal relationship of the parties." *Id.* (citing *Buckhannon Bd. &*

*Care Home, Inc., v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001)). Even a consent order without the significant injunctive relief awarded by the Consent Order entitles a plaintiff to prevailing party status.[5] "[W]here a court enters an order that mandates relief or which incorporates settlement terms or consent decrees, and the defendant is subject to the court's jurisdiction for enforcement purposes, plaintiff is a prevailing party."[6] Here, the Consent Order this Court entered (1) contains a significant injunction preventing Defendant from ever again enforcing the ordinance that Plaintiffs challenged, (2) incorporates the terms of the settlement agreement by reference, and (3) explicitly holds that "the Court retains jurisdiction to enforce the terms of this Order." Doc. 18. Accordingly, there can be no doubt that Plaintiffs are prevailing parties.

---

[5] *See id.* at 906 ("[A] party may be considered a prevailing party under a consent decree without any admission of liability on the merits of the underlying claims or a requirement that the other party modify a policy, procedure or practice."); *see also* Michael Avery, et al., *Police Misconduct: Law and Litigation* § 14:2 Prevailing Parties (2016) ("[W]ith respect to 'voluntary' changes in policy, a consent decree or other order changing 'legal relationship' of the parties is sufficient even without an admission of liability." (quoting *Buckhannon*, 532 U.S. at 604.)).

[6] Michael Avery, et al., *Police Misconduct: Law and Litigation* § 14:2 Prevailing Parties (2016) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) (finding that where court expressly maintains jurisdiction to enforce a settlement agreement by incorporating terms of agreement in court order, plaintiff is a prevailing party).

Setting aside the Consent Order in this action, this Court should nevertheless find that Plaintiffs are the prevailing party because they obtained a damages award—even to the extent an award of $2,000, or $500 per Plaintiff, can ever be characterized as nominal damages. First, this and other Circuit's have held that damage awards of this scale are not nominal and can yield reasonable fees that far exceed those damages.[7] Second, as the Supreme Court held unambiguously in *Farrar v. Hobby*, "[A] plaintiff who wins nominal damages is a prevailing party under § 1988." 506 U.S. 103, 112 (1992). Thus, Defendant's contention that the award of nominal damages disentitles Plaintiffs to prevailing party status is categorically wrong.

Defendant does, however, also argue that the award of purportedly nominal damages also bears on the reasonableness of the attorneys' fees requested by Plaintiffs. In making this argument, Defendant again ignores that Plaintiffs secured a valuable permanent injunction, which prevented the imminent removal of Plaintiffs' artwork and which put a stop to a program of multi-level government pre-approval preconditioning artistic expression. Although Defendant argues that the threatened removal of Plaintiffs' murals was

---

[7] *See Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir. 1973) (finding "that $500 cannot be properly regarded as nominal damages"); *see also Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996) (characterizing an award of $500 as compensatory and affirming award of $162,209 in § 1988 fees against claim that relief was only nominal).

not "official" City policy (though made by a City employee or employees and made pursuant to a duly enacted City ordinance), Defendant cannot deny that it enforced the Public Art Ordinance via dozens and dozens of applications from Plaintiffs and others. *See* Second Weber Declaration, ¶7 and exhibits referenced therein.

In determining whether the award of nominal damages entitles a party to attorneys' fees under § 1988, a court must examine (1) the extent of relief obtained, (2) the significance of the legal issue, and (3) the public purpose served. *See, e.g., Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1040 (11th Cir. 2010). Here, all three factors weigh strongly in Plaintiffs' favor, especially given the additional injunctive relief. Courts routinely award plaintiffs § 1988 fees where they obtain nominal damages and, as here, vindicate important constitutional rights or secure a valuable public benefit.[8]

---

[8] *See, e.g., Mercer v. Duke Univ.*, 401 F.3d 199, 211-212 (4th Cir. 2005) (affirming $349,244 in attorney fees awarded in Title IX suit yielding only nominal damages); *Wagner v. City of Holyoke*, 404 F. 3d 504, 510 (upholding attorney's fee award of $72,840 where plaintiff's verdict for §1983 was nominal damages); *Diaz-Rivera v. Rivera-Rodriquez*, 377 F. 3d 119, 125 (1st Cir. 2004) (upholding attorney's fee award where plaintiff won solely nominal damages after proving due process violation); *O'Connor v. Huard*, 117 F. 3d 12, 17–18 (1st Cir. 1997) (attorney's fee award to a prisoner who prevailed on his due process rights and received nominal damages, noting specifically the Court's concern with the "importance of providing an incentive to attorneys to represent litigants, such as O'Connor, who seek to vindicate constitutional rights but whose claim may not result in substantial monetary compensation"); *Johnson v. Kativand*, 192 F. 3d 656 (7th Cir.

First, Plaintiffs obtained every single measure of relief sought through this litigation: their murals remain in place, they no longer have to go through an elaborate approval process prior to creating artwork, and they will receive $500 each. This is not a case like *Farrar* where Plaintiffs sought millions and millions of dollars of damages; rather, they sought vindication of constitutional wrongs and small damages. There is no rule that damages and attorneys' fees for constitutional litigations must be in any way proportionate. *See Riverside v. Rivera*, 477 U.S. 561 (1986). The value of constitutional rights is typically not easy to put in monetary terms, but for the inconvenience of having to traverse an illegal approval process and any resulting chilling of Plaintiffs' speech, $500 seems to be not inappropriate compensation and was exactly the amount of

---

1999) (attorney's fee award for plaintiffs who recovered a punitive award significantly lower than the amount requested); *Murray v. City of Onawa*, 323 F. 3d 616, 619 (8th Cir. 2003) (attorney's fee award for plaintiff's who received a nominal damages despite seeking $500,000 in damages)*; Ollis v. Hearthstone Homes, Inc.*, 495 F.3d 570 (8th Cir. 2007) (attorneys' fee entitlement based on award of $1 in nominal damages); *Wilcox v. City of Reno*, 42 F.3d 550 (9th Cir. 1994) (plaintiff awarded nominal damages entitled to attorneys' fees, where action benefited the public at large); *Layman Lessons, Inc. v. City of Millersville, Tennessee*, 550 F. Supp. 2d 754 (M.D. Tenn. 2008) (plaintiff awarded nominal damages entitled to full attorneys' fees); *see also Brandau v. Kansas*, 168 F.3d 1179, 1183 (10th Cir. 1999), *cited with approval in Mercer*, 401 F. 3d at 204 ("[W]hat is controlling [in determining entitlement to attorneys' fees based on a nominal damages award] is Plaintiff's vindication of her civil rights and of important rights of co-workers, even if she sought only a modest amount of damages."); *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (same).

small damages sought by Plaintiffs and ultimately proposed by Plaintiffs in settlement.

Second, this case involved a legal issue essential to our democracy and the community of Atlanta: Plaintiffs vindicated core civil rights regarding the freedom of speech and the First Amendment to the Constitution. The import of the rights at issue is buttressed, in part, by the extensive coverage this litigation received in local and national media. *See, e.g.*, Alan Blinder, *In Atlanta, Murals as Art, and as Zoning Law Test Cases*, N.Y. TIMES, A14 (June 15, 2017).

Third, the public was well served by this litigation in ways that are undeniable even if not quantifiable. Atlanta is well known for its artistic production and its murals are a well-known part of the city's cultural fabric.[9] Artists who wish to engage in public expression visible to the public no longer have to engage in a lengthy pre-approval process characterized by standardless government discretion as a result of this litigation. Accordingly, characterization of Plaintiffs' comprehensive victory as "nominal" is inappropriate and does not support a reduction of the amount of fees to which they are entitled.

> III. **The City's contention that a phone call would have obviated this litigation is belied by the actual facts in this case and irrelevant as a matter of law.**

---

[9] *See id.* (In Atlanta, . . . the streets can sometimes seem like galleries.").

The final reason that Defendant has set forth to avoid its obligation to pay prevailing party fees pursuant to § 1988 is that Plaintiffs decided not to send Defendant pre-suit notice. Like the other reasons Defendant have put forward, this one does not provide the Court with a legally cognizable basis to reduce or deny Plaintiffs' requested fees.

In the first place, Defendant's argument amounts to imposing a pre-suit notice requirement before a prevailing party can be entitled to attorneys' fees. It is well established that *ante litem* notice is not a prerequisite to a § 1983 suit or attorneys' fees derived therefrom. *See Ehlers v. City of Decatur, Georgia*, 614 F.2d 54, 56 (5th Cir. 1980) (holding that because "[f]ederal courts may not require exhaustion of state administrative or judicial remedies in a § 1983 action for damages for deprivation of a constitutional right[,] . . . Georgia's *ante-litem* notice requirement . . . may not constitutionally be applied to this § 1983 action.").

Second, the only way that a lack of pre-suit notice would act to reduce Plaintiffs' entitlement to attorneys' fees is if the lack of such notice was part of a broader pattern of bad faith that caused unnecessary litigiousness.[10] Here, there

---

[10] *See Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357 (11th Cir. 2006) (holding that lack of pre-suit notice alone was insufficient to reduce or deny attorneys' fees under § 1988, but noting that bad faith, undue litigiousness, or having caused unnecessary trouble and expense may be valid reasons for such a reduction). Plaintiffs' counsel is unaware of any authority where a court has denied fees based on a lack of a demand letter alone. *Cf., e.g., Access 4 All, Inc. v.*

is no evidence other than the lack of a formal demand letter. And indeed, as Plaintiffs' counsel states in detail in the Weber Declaration filed herein, there were important reasons that not sending a formal demand letter in this case.[11]

For the Court to deny Plaintiffs fees on this ground, it would need to find not only that Plaintiffs counsel acted in bad faith, but additionally that the City would have stopped its years long prospective enforcement of the Public Art Ordinance, along with its threatened retroactive enforcement, if only Plaintiffs had asked. Prior to this litigation, the City had more than ample notice that its Public Arts Ordinance was unconstitutional, and others had asked that it not enforce the ordinance because it was unconstitutional.[12] Despite this knowledge

---

*Boardwalk Regency Corp.*, No. 09-3817, 2012 WL 3627775, at *4 (D.N.J. 2012) ("Defendants' argument that plaintiffs should be denied fees because they did not give defendants "notice of an opportunity to remedy any alleged ADA violations . . .' is frivolous.").

[11] *See* Second Weber Decl., ¶ 14 (stating that such notice was not provided because (a) the City had previously forced litigation in a nearly identical dispute where such notice was sent, (b) the City was provided with ample verbal and public notice that the Public Art Ordinance was unconstitutional, (c) the City did not inform Plaintiffs' counsel of its intention to remove murals despite prior representations that it would not enforce the Public Art Ordinance, (d) Plaintiffs' desire to obtain injunctive relief and damages not otherwise available without a lawsuit, and most critically, (e) the imminence of the threat given to artists and property owners and the potential for criminal liability).

[12] *See generally* Second Weber Decl. at ¶¶ 4–5 (*Bender* litigation on overlapping constitutional issues), ¶ 8 (Weber publicly raises constitutional concerns regarding Public Art Ordinance and in private discussions with an attorney for the City in 2014), ¶¶ 9–10 (NAAG committee convened to discuss Public Arts Ordinance, of which one attorney in Defendant's legal team was a member,

that the Public Art Ordinance was unconstitutional, enforcement efforts continued and accelerated. *See id.* at ¶ 7; *see generally* Doc. 4. Thus, based on the abundant notice the City had regarding the unconstitutionality of its Public Art Ordinance and its continued enforcement efforts, the notion that the City would have stopped if only asked is nothing more than counterfactual speculation. Indeed, if any party has engaged in stubborn litigiousness over years regarding mural permitting, it is the City, not Plaintiffs. Accordingly, because the suit was not unnecessary, and because the City has not even argued any other reason to depart from the presumed reasonability of the lodestar framework, Plaintiffs should receive their requested fees.

## CONCLUSION

Because there is no reason to deny Plaintiffs their fees entirely, as Defendant has urged, and because Defendant has not identified any specific time entries that are unreasonable and Plaintiffs' counsel have exercised reasonable billing judgment, Plaintiffs should be awarded the self-reduced lodestar attorneys' fees as requested.

Respectfully submitted, this 25th day of September, 2017.

---

which found the constitutional concerns surrounding the ordinance to be "very problematic").

| | |
|---|---|
| */s/ Gerald Weber* | */s/ Zack Greenamyre* |
| Gerald Weber | Zack Greenamyre |
| Georgia Bar No. 744878 | Georgia Bar No. 293002 |
| Law Offices of Gerry Weber, LLC | Mitchell & Shapiro LLP |
| Post Office Box 5391 | 3490 Piedmont Road, Suite 650 |
| Atlanta, Georgia 31107 | Atlanta, Georgia 30305 |
| (404) 522-0507 | (404) 812-4747 |
| wgerryweber@gmail.com | zack@mitchellshapiro.com |

*Attorneys for Plaintiffs*

# EXHIBIT A

## SUMMARY ATTORNEY HOUR AND EXPENSES

Re: *Williams et al. v. City of Atlanta,* **1:17-CV-1943-AT (N.D. Ga. 2017)**

---

**Attorney Hours after July 27, 2017:**

| Attorney | Reduced Hours | Rate | Total |
|---|---|---|---|
| Gerald Weber | 8.5 | $520.00 | $ 4,420.00 |
| Zack Greenamyre | 20.5 | $325.00 | $ 6,662.50 |
| Attorney Subtotal | 28.5 | | $ 11,082.00 |

Total Attorney Hours after July 27, 2017:     $11,082.00

Total Attorney Hours and Expenses through July 27, 2017:     $50,372.97

**Total Attorney Hours and Expenses:**     **$61,454.97**

## **LOCAL RULE 5.1 CERTIFICATION**

Counsel for Plaintiffs certify that this Brief has been prepared with Book Antiqua, 13 point font and therefore it complies with the requirements of L.R. 5.1(C).

>                     */s/Zack Greenamyre*
>                     Zack Greenamyre
>                     Georgia Bar No. 293002

## CERTIFICATION OF ELECTRONIC FILING

The undersigned hereby certifies the filing of this Plaintiffs' Reply Brief in Support of Motion for Prevailing Party Fees and Costs upon the parties and all counsel by the Court's Electronic Filing System and via email.

This 25th day of September, 2017.

> */s/Zack Greenamyre*
> Zack Greenamyre
> Georgia Bar No. 293002